IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROGER JUDGE, )<br>     Plaintiff, )<br>     )<br>vs. )<br>     )<br>DR. B. JIN; LOUIS FOLINO; L. MOORE; )<br>MS. WEST; NEDRA GREGO; JOHN )<br>MCANANY; IRMA VIHLIDAL; )<br>JEFFREY ROGERS; DORINA VARNER; )<br>IMAM ABUBAKER MUHAMMAD, )<br>JOHN/JANE DOE, BHS; JOHN/JANE )<br>PHS/WEXFORD; et al., )<br>capacity, )<br>     Defendants. ) | Civil Action No. 12-1784<br><br>Judge Arthur J. Schwab/<br>Magistrate Judge Maureen P. Kelly |

## **MEMORANDUM ORDER**

Roger Judge ("Plaintiff"), is a prisoner in the Pennsylvania Department of Corrections ("DOC"), who was sentenced to death for First Degree Murder, but the death sentence has been the subject of a grant of federal habeas corpus relief based upon Petitioner's sentencing phase claims in <u>Judge v. Beard</u>, No. 2:02-cv-06798 (E.D. Pa. ECF No. 80; ECF No. 122 (filed 11/29/2012). According to a search on PACER, Plaintiff has previously filed pro se at least five civil actions in the United States District Courts located in Pennsylvania and at least one appeal to the United States Court of Appeals for the Third Circuit. Accordingly, he is well acquainted with the procedures and rules of the federal courts.

Initially, in December 2012, Plaintiff filed a Motion for Leave to Proceed in Forma Pauperis, (the "IFP Motion") which was accompanied by a proposed 35 page typed Complaint, naming 10 individual defendants plus the addition of "et al." in the caption. ECF No. 1-2.

Roughly four months later in April 2013, Plaintiff filed what he entitled a "Supplemental Complaint", seeking to add at least two additional John/Jane Doe defendants, being the Chief Medical Office of Prison Health Care Services, and the "Chief Executive Officers/Manager/President/Overseer of BHCS (i.e., Bureau Health Care Services, Inc.)[.]" ECF No. 2. The Court then ordered Plaintiff to file one consolidated complaint. ECF No. 3. After the IFP Motion was granted, the Clerk's Office filed as the Complaint, the original Complaint that accompanied the IFP Motion. ECF No. 5. Thereafter, Plaintiff then filed a Consolidated Amended Complaint, as previously directed by the Court (the "Operative Complaint"). ECF No. 9.

### A. THE ALLEGATIONS OF THE OPERATIVE COMPLAINT

The Operative Complaint consists of 40 typed pages naming at least 12 different defendants in the caption of the case and apparently intending that others who are unnamed in the caption also be made defendants in this action, given Plaintiff's inclusion of "et al." in the caption. In the Operative Complaint, Plaintiff complains about many separate and distinct events, occurring from March 7, 2011 (ECF No. 9 at 18, ¶ 83) to April 27, 2012 (ECF No. 9 at 28, ¶156).

The Operative Complaint is divided into "Six Counts." The First Count alleges that on or about August 19, 2011, Defendants Dr. Byunchak Jin and Nurse Jane Doe tried to force Plaintiff to take some medications and a blood pressure test, and Plaintiff refused because he is Muslim and this was during the month of Ramadan when devout Muslims are required to fast during the daylight hours. Id. at ¶ 22. Plaintiff was then told by Dr. Jin that Plaintiff would be kept indefinitely in the infirmary until he started to take his medications. Id. at 24. Plaintiff alleges that all of these events occurred after Plaintiff filed a grievance requesting a personal blood pressure monitor. Plaintiff, under duress, started to take the medications. Id. at ¶ 26. Plaintiff was

released from the infirmary on August 22, 2011.  Id. at ¶ 27.  Plaintiff alleges that the foregoing establishes violations of his rights under the First Amendment free exercise clause, and under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  Id. at 10 to 11, ¶ 37.  Plaintiff also complains about the actions of Defendants Grego, Folino and Varner for their failure to investigate his grievance allegations concerning the coerced taking of medications.  ECF No. 9 at 11, ¶¶ 38 – 39.

In Count 2 of the Operative Complaint, Plaintiff complains of actions taken on June 11, 2012, nearly one year after the actions complained of in Count 1, when Plaintiff received notice from Imam A. Muhammad, the Islamic Chaplain and Reverend Jabulani Sibanda that Plaintiff was being removed from participating in Ramadan fasting (which was set to begin on July 19, 2012) for medical reasons.  Plaintiff, in conclusory fashion, claims that Plaintiff was removed from fasting "for manufactured and retaliatory reasons[,] [r]esulting from prior events from the previous year[,] August 19, 2011."  ECF No. 9 at 12, ¶ 47.  Plaintiff then goes on to complain about the roles of Defendants Rogers, Folino, and Varner in denying his grievance and appeals concerning the fact that Petitioner was removed from the participation list for Ramadan fasting.  Again, he claims that the foregoing actions occurring in June 2012 to September 2012, violated his rights under the First Amendment Free Exercise clause and RLUIPA  Id. at 13 to 14.

In Count 3, Plaintiff complains that on September 6, 2011, between the hours of 10:30 a.m. and 10:45 am, that Physician's Assistant ("P.A.") West came to Plaintiff's cell to examine him about a foot and leg injury.  She visually examined the leg and concluded that there was nothing wrong with it.  Plaintiff requested that testing be done such as an X-ray and she declined to do so.  Plaintiff asserts that this decision by Defendant West left Plaintiff to further suffer the

pains of his injury. ECF No. 9 at 15.

Eight months later, Plaintiff was seen by Defendant Jin on May 21, 2012, who also visually examined Plaintiff and like Defendant West, before him, concluded that there was nothing wrong with Plaintiff's leg. Plaintiff asserts that the problem has been going on for a long time and they "use evasive tactics, blaming (Hypertension) as the cause of the foot injury. Plaintiff Roger Judge clearly explained that Plaintiff injured his foot/leg while playing basketball." ECF No. 9 at 16, ¶ 66. Plaintiff alleges that the delay in treating his leg has caused the injury to progress to the upper part of his leg. Plaintiff also complains of the actions taken by Defendants Grego, Folino and Varner in denying Plaintiff's grievances concerning his claims about not receiving proper care for his leg injury. ECF No. 9 at 16 to 17, ¶¶ 69 to 76. Plaintiff claims that the Defendants in Count 3 violated his First, Eighth and Fourteenth Amendment rights. Id. at 17, ¶ 78.

In Count 4 of the Operative Complaint, Plaintiff complains that he has hypertension, i.e., high blood pressure. Plaintiff, although not a physician, asserts that "[t]his condition can on[ly] be controlled by frequent monitoring." ECF No. 9 at 18, ¶ 81. He requested to have his blood pressure checked daily two to three times a day but was denied. On March 7, 2011, Plaintiff was allegedly administered a blood pressure check-up improperly by a Nurse Jane Doe through Plaintiff's cell door slot. Id., at ¶ 83. Given the location of the cell door slot, Plaintiff complains that the only way he could undergo the blood pressure cuff was to kneel down on the cell floor and elevate his arm above the shoulder. Plaintiff alleges that this method of taking his blood pressure reading was improper. He requested to be taken to the L-Unit triage room, which is used for medical purposes, in order to have his blood pressure checked. Nurse Jane Doe denied

such request. Id. at ¶ 88. Plaintiff then sent a request to L. Moore, PHS. Plaintiff also complains about Defendants Grego, Folino and Varner for their roles in denying Plaintiff's grievances concerning this allegedly improper taking of Plaintiff's blood pressure. Plaintiff claims that these Defendants in Count Four violated his First, Eighth and Fourteenth Amendment rights. Id. at 20, ¶ 99.

In Count 5 of the Operative Complaint, Plaintiff complains that on July 29, 2011, he let Defendant Jin and "the rest of the medical staff and personnel" know (id., at ¶ 102) that he would like to purchase a blood pressure monitor or be provided one by the Medical Department. On September 13, 2011, Plaintiff placed a sick call request that he have his blood pressure checked two to three times daily. Id. at 21, ¶ 107. Plaintiff saw Dr. Jin sometime between September 11 and September 15 in the outside yard area and he discussed with Plaintiff his medical concerns "in front of everyone in the yard area." Id. at 108. Plaintiff then requested to be taken to the L-Block triage room but Dr. Jin denied the request. Plaintiff also complains that Dr. Jin told Plaintiff that if he were to request to have his blood pressure checked two to three times daily, Plaintiff would be charged an amount for such request. Plaintiff has brought to the attention of many of the defendants that he has medical conditions which contribute to his blood pressure's spiking and dropping. Plaintiff complains that his request to purchase or be provided with a blood pressure monitor was denied "without reason." Id. at 22, ¶ 113. Plaintiff also complains that his request for "medical privacy" was denied without "adequate reasons." Id., at ¶ 114.

On June 29, 2012, Plaintiff wrote to the security office to inquire as to them if a "portable blood pressure monitor would be a security issue." There was none according to Plaintiff and that the Security Office responded that the Medical Department had "the say on the blood pressure

monitor issue." Id. at ¶ 115.

Plaintiff also complains about the roles of Defendants McAnany, and the Facility Manager and Varner in denying Plaintiff's grievances concerning this allegedly improper denial of the blood pressure monitor. Plaintiff claims that these Defendants in Count Five violated his First, Eighth and Fourteenth Amendment rights. Id., at 24, ¶ 126.

In Count Six of the Operative Complaint, Plaintiff complains about an incident occurring on January 13, 2012, when Plaintiff began experiencing stomach pains. He claims that his pain was so severe that he had to press his emergency call button. ECF No. 9 at 25, ¶ 131. At about 1:50 p.m., Plaintiff was taken over to the medical department, where Plaintiff was placed in a "psychiatric cell which purpose is to be used for mental patients" and Plaintiff is not a mental patient. Id., at ¶ 134. Plaintiff then waited 45 minutes until he was seen by Defendant Jin. Dr. Jin asked Plaintiff questions about his stomach, and touched Plaintiff's stomach and then administered a shot to Plaintiff's hip for the pain. Dr. Jin did not order any tests to be performed. Id. at 26, ¶ 137. Four days later, Dr. Jin again saw Plaintiff and ordered tests. Id., at ¶ 138. Plaintiff complains that Dr. Jin "failed in his duty to have these test[s] performed immediately" and that there was no one remaining in the Medical Department who could order any tests during the intervening four days.

On Saturday, January 14, 2012, Plaintiff was seen by an unnamed P.A., who, according to Plaintiff noticed he was in "dire need of immediate medical attention" and she took a urine sample, noticing that the sample was "full of blood" and the P.A. ordered pain medication for Plaintiff. ECF No. 9 at 26, ¶¶ 140-41. Plaintiff alleges that the P. A. told Plaintiff that the shot which Dr. Jin had given to Plaintiff could have caused Plaintiff to die. Id., at ¶142. Plaintiff was

6

also allegedly told by the P.A. that she could do nothing further for him until Dr. Jin returned in three days and that the urine sample also would not be sent out until Dr. Jin returned. On January 17, 2012, Plaintiff was released from the Medical Unit. Plaintiff complains that the actions taken by Dr. Jin were "negligent and deliberate .... causing severe injury to Plaintiff which could have ended in Plaintiff['s] death." ECF No. 9 at 27, ¶ 144.

Plaintiff also seemingly complains about the roles of Defendants Folino and Varner in denying Plaintiff's grievances concerning this allegedly improper treatment of Plaintiff. He claims that these Defendants in Count Six violated his First, Eighth and Fourteenth Amendment rights. Id., at 29, ¶ 161.

Plaintiff also complains about Prison Health Services ("PHS"), the private contractor hired by the Department of Corrections ("DOC") to provide health care services to prisoners in DOC custody. Plaintiff alleges that PHS knew about all of the foregoing medical mistreatment of Plaintiff but refused to intervene and refused to discipline any of the defendants. ECF No. 9 at 31, ¶¶ 170 – 174. Plaintiff makes a similar allegation against the Defendant BHCS. Id., at ¶ 176.

### B. THE OPERATIVE COMPLAINT VIOLATES FEDERAL RULE OF CIVIL PROCEDURE 20

The Operative Complaint names at least 12 Defendants in the caption of the case, complaining of many separate and distinct incidents that allegedly occurred over the course of more than one year, i.e., between March 7, 2011 (ECF No. 9 at 18, ¶ 83) and April 27, 2012 (id., at 28, ¶ 156), alleging violations of the Constitution, as well as the RLUIPA (id., at 10, ¶ 37).

Federal Rule of Civil Procedure 20 expressly states that defendants may be joined only

where certain requirements have been met.[2]  Specifically, Rule 20 provides in relevant part that:

> Persons--as well as a vessel, cargo, or other property subject to admiralty process in rem--may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

As explained by the United States Court of Appeals for the Seventh Circuit, Rule 20 "imposes two specific requirements for the permissive joinder of defendants: (1) a right to relief must be asserted by the plaintiff against each defendant relating to or arising out of the same transaction or series of transactions; and (2) some common question of law or fact must be present with respect to all parties in the action (i.e. a common thread)."  Intercon Research Associates, Ltd. v. Dresser Industries, Inc., 696 F.2d 53, 57 (7th Cir. 1982).

Moreover Federal Rule of Civil Procedure 18, which permits joinder of multiple **claims** against a party does not trump the requirements of Rule 20 because "[d]espite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." 7 Wright & Miller: Federal Prac. & Proc. §

---

[2]  The Court has the inherent power to *sua sponte* raise the issue of improper joinder of parties in violation of Rule 20.  BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. April 2, 2004) ("This Court has ruled, sua sponte, that two-hundred and two Defendants in the above-captioned case have been improperly joined pursuant to Fed. R. Civ. Pro. 20").  See also Chambers v. NASCO, Inc., 501 U.S. 32, 46-47 (1991) (court's inherent power is not displaced by statutes); Stafford v. United States, 208 F.3d 1177, 1179 (10th Cir. 2000) ("we should impose the following filing restrictions using our inherent power to regulate federal dockets, promote judicial efficiency, and deter frivolous filings").

1655 (3d ed. ). Accord Intercon, 696 F.2d at 56-57.

In addition to the Operative Complaint containing allegations against at least 12 different defendants, and recounting distinct and separate events that span more than one year, the Operative Complaint asserts many distinct and unrelated claims. The legal claims include, *inter alia*: 1) First Amendment retaliation claims; 2) First Amendment free exercise claims; 3) Eighth Amendment deliberate indifference claims; and 4) in addition to the foregoing violations of the Constitution, Plaintiff alleged violations of federal statutes, including the RLUIPA. These separate and distinct events and claims, spanning over more than one year do not "aris[e] out of the same transaction, occurrence or series of transactions or occurrences" and do not present some common question of law or fact with respect to all the Defendants in this action, as required by Rule 20.

In light of the foregoing disparate and distinct claims occurring over the course of a year, there is simply not one question of law or fact that is common to all defendants arising in this action as required by Fed.R.Civ.P. 20, and so the Operative Complaint, as presently constituted must be amended so as to come into compliance with the Federal Rules of Civil Procedure. Accordingly, Plaintiff is hereby ordered to file, no later than September 21, 2013, an amended complaint that complies with Fed.R.Civ.P. 20. To the extent that not all of the claims he wishes to bring can be included in one Complaint consistent with Fed.R.Civ.P. 20, Plaintiff will have to file new complaints in new cases and subject himself to the payment of the filing fees for those new and separate actions. See, e.g., George v. Smith, 507 F.3d 605 (7th Cir. 2007). In other words, Plaintiff will have to delete claims from the Operative Complaint that do not conform with Fed.R.Civ.P. 20. As the United States Court of Appeals for the Seventh Circuit explained:

> [M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees . . . .

Id. at 607.

Furthermore, Plaintiff is advised that he must supply a copy of the amended complaint for each defendant named in the amended complaint along with the same number of United States Marshal Form 285 and with the same number of completed notices of lawsuit and requests for waiver of service.[1] See, e.g., Holly v. True, NO. 92 C 1636, 1992 WL 159318, at *3 (N.D. Ill. July 1, 1992) ("The court denies Holly's motion to submit his complaint without copies. If Holly wants to sue twenty-eight defendants, he must provide the court with sufficient copies of his complaint in order to effect service. If Holly finds this task difficult, he should seriously consider whether he wants to sue each of the defendants he has named. One of the purposes of requiring even pro se litigants to provide service copies is to cause them to focus their efforts against those individuals truly responsible for the deprivations alleged in the complaint."). To the extent that he cannot afford to pay for photocopies of any amended complaint, then he may hand copy each such complaint so long as the hand copies are identical. The Court will not provide Plaintiff copies. See, e.g., Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993) ("There is no provision in the [IFP] statute for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant."). It is Plaintiff's

---

[1] Plaintiff may request in writing from the Clerk's Office the US Marshal Form 285 and the Notice of Lawsuit and Request for Waivers.

responsibility to provide sufficient copies. If he does not do so, his case could be dismissed for failure to prosecute and/or for failure to obey a court order. Plaintiff has been so warned.

In the exercise of our inherent authority to control our docket,[2] we enter the following order:

**AND NOW** this 21st day of August, 2013, Plaintiff is hereby **ORDERED** to file by September 21, 2013, an amended complaint that conforms to the requirements of Fed.R.Civ.P. 20, along with a sufficient number of copies of the amended complaint for serving each defendant named therein as well as sufficient copies of USM Form 285 and Notices of Lawsuit/Requests for Waivers of Service. Failure to do so may result in the dismissal of the suit for failure to prosecute and/or failure to comply with court orders.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rule 72.C.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of this Order to file an appeal to the District Judge which includes the basis for objection to this Order. Any appeal is to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to file a timely appeal will constitute a waiver of any appellate rights.

s/Maureen P. Kelly  
MAUREEN P. KELLY  
U.S. MAGISTRATE JUDGE

Dated: August 21, 2013

cc: The Honorable Arthur J. Schwab
     United States District Judge

---

[2] Chambers v. NASCO, Inc.; 501 U.S. at 46-47; Stafford v. United States, 208 F.3d at 1179.

Roger Judge
DT-6550
SCI Greene
175 Progress Drive
Waynesburg, PA 15370