IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROGER JUDGE, <br>           Plaintiff, <br><br> vs. <br><br> BYUNCHAK JIN, M.D. Med. Dir.; <br> LOUIS FOLINO, Supt.; L. MOORE, <br> PHSA; NEDRA GREGO, RNS; <br> JOHN/JANE DOE, BHCS; DORINA <br> VARNER, <br>           Defendants. | Civil Action No. 12-1784 <br><br> Judge Arthur J. Schwab/ <br> Magistrate Judge Maureen P. Kelly <br><br> Re: ECF No. 41 |

## REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

Plaintiff Roger Judge ("Plaintiff"), an inmate at the State Correctional Institution at Greene ("SCI – Greene"), has presented a second amended civil rights complaint [ECF No. 17] which he has been granted leave to prosecute without prepayment of costs. Plaintiff has named two groups of defendants, (i) the Department of Corrections defendants, which include Nedra Grego, a Registered Nurse Supervisor, SCI-Greene Superintendent Louis Folino, and Chief Grievance Officer Dorina Varner (collectively, "DOC Defendants"); and, (ii) the medical defendants, which include Byunchak Jin, M.D., and L. Moore, Prison Health Service Administrator (collectively, "Medical Defendants").

Pending before the Court is a Motion to Dismiss [ECF No. 41], filed on behalf of the DOC Defendants only, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

1

Procedure. For the following reasons, is respectfully recommended that the Motion to Dismiss filed by the DOC Defendants, [ECF No. 41], be granted.[1]

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

Roger Judge ("Plaintiff"), is a prisoner currently incarcerated at the Pennsylvania State Corrections Institution at Greene ("SCI – Greene"). Plaintiff was sentenced to death for First Degree Murder, but the death sentence has been the subject of a grant of federal habeas corpus relief based upon Petitioner's sentencing phase claims in Judge v. Beard, No. 2:02-cv-06798 (E.D. Pa. ECF No. 80; ECF No. 122 (filed 11/29/2012)). According to a search on PACER, Plaintiff has previously filed at least five *pro se* civil actions in the United States District Courts located in Pennsylvania and at least one appeal to the United States Court of Appeals for the Third Circuit. Accordingly, he is well acquainted with the procedures and rules of the federal court system.

On August 21, 2013, the Court issued an order directing Plaintiff to file an amended complaint, ECF No. 13, because his then-operative Amended Complaint, ECF No. 9, violated the joinder rules set forth in Rule 20 of the Federal Rules of Civil Procedure. Plaintiff filed his second Amended Complaint, ECF No. 17, which is the operative complaint.

In his second Amended Complaint, Plaintiff alleges that Defendants violated his constitutional rights under the First, Eighth and Fourteenth Amendments to the United States Constitution by requiring Plaintiff to take blood pressure medication during the

---

[1] By Order dated January 23, 2014, this Court granted Plaintiff's Motion to Remove Defendants John/Jane Doe, BHCS. On April 11, 2014, this Court similarly granted Plaintiff's Motion to Remove (Strike) Defendant L. Moore from this action. [ECF No. 49].

day while he was fasting for Ramadan; failing to provide requested medical treatment for leg, foot and stomach issues; failing to provide Plaintiff with his own blood pressure monitor to keep in his cell; failing to permit Plaintiff to leave his cell three times per day to have his blood pressure checked in a triage unit rather than his cell; and, violating his rights to privacy by discussing his medical issues in the presence of other inmates.

In particular, Plaintiff alleges that he has a life threatening high blood pressure condition that requires frequent monitoring. ECF No. 17 at 6, ¶ 15. He also claims that he suffers from a heart murmur and an anxiety disorder that causes frequent panic attacks. Id. at ¶ 16. Plaintiff has been prescribed and is provided several medications to treat his hypertension, and he contends "frequent and daily [blood pressure] monitoring is required." ECF No. 16 at 6, ¶ 14. Plaintiff alleges that the Medical Defendants are not checking his blood pressure as often as he believes necessary (two to three times per day). ECF No. 17 at 7, ¶ 20. In addition, Plaintiff complains that the Medical Defendants are not properly taking his blood pressure readings because on March 7, 2010, an unidentified nurse required Plaintiff to place him arm through the cell door slot, which requires him to kneel down and raise his arm above the shoulder, which according to Plaintiff, alters the test. Id. at ¶¶21 to 25.

Plaintiff desires an in-cell blood pressure monitor so that he can perform self-testing at will. Id. at 7, ¶ 19. Plaintiff alleges he complained several times about the inadequacy of his blood pressure monitoring and lodged several requests for a blood pressure monitor in his cell. Plaintiff complains that Defendants Dr. Jin, Superintendent Louis Folino, Nurse Supervisor Nedra Grego and L. Moore all refused to provide a

satisfactory explanation as to why Plaintiff is not permitted an in-cell blood pressure monitor. Id. at 8 to 9, ¶¶ 26 – 32.

Plaintiff alleges that after making his repeated requests, Dr. Jin retaliated against Plaintiff for filing grievances and complaints about obtaining a blood pressure monitor in his cell. Id. at 9 to 12, ¶¶ 33 – 51. Among the allegedly adverse actions taken by Dr. Jin is the requirement that Plaintiff to take his blood pressure medication during daylight hours of the month of Ramadan, notwithstanding that Plaintiff is a Muslim who felt he was required to fast, despite receiving a letter from the Muslim Chaplain that Plaintiff's medical condition excused him from the fast requirements. ECF No. 9-6 at 1. Plaintiff asserts further retaliation by Dr. Jin when, on "June 11, 2012, Plaintiff was removed from Ramadan participation for reasons manufactured by the medical department." Id. at 12, ¶ 53.

The DOC Defendants contend that the facts alleged fail are insufficient to state a claim against them as a matter of law.

**B.      STANDARD OF REVIEW**

As the United States Supreme Court explained in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Under this standard, the court must, as a general rule, accept as true all factual allegations of the complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).

Plaintiff attached his relevant grievances and grievance appeals to his first Amended Complaint, ECF No. 9-1 through 9-10. The Court has reviewed these grievances as part of the record in this action. However, consideration of these exhibits by the Court does not convert the DOC Defendants' Motion to Dismiss for failure to state a claim into a motion for summary judgment. Pryor v. National Collegiate Athletic Association, 288 F.3d at 560 ("... certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an Federal Rule of Civil Procedure 56 motion for summary judgment"); and see, Spencer v. City of Philadelphia, No. 09-123, 2012 WL 1111141 (W.D. Pa. Apr. 2, 2012).

Accordingly, in addition to the second Amended Complaint, this Court may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). Moreover, under the 12(b)(6) standard, a "court need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), *amended by,* 275 F.3d 1187 (9th Cir. 2001). The court also need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

The question to be resolved is whether, taking the factual allegations of the complaint, which are not contradicted by the exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. at 555. Or put another way, a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Because Plaintiff is pro se, courts accord an even more liberal reading of the complaint, employing less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519 (1972). With these precepts in mind, it is apparent that the Motion to Dismiss filed by the DOC Defendants should be granted.

**C.    DISCUSSION**

The DOC Defendants assert several grounds for dismissal of the Amended Complaint. First, they contend that because Plaintiff's claims against Defendants Folino and Varner arise from their participation in the grievance process, the DOC Defendants lack the requisite personal involvement in the alleged violation of Plaintiff's rights to sustain claims against them. Second, they argue that Plaintiff has failed to exhaust available administrative remedies as to the DOC Defendants by failing to name them in

any related grievances submitted by him. See, ECF No.9, Exhibits A – J. Third, the DOC Defendants contend that Plaintiff's claim for denial of access to medical care is legally insufficient, given that: (i) the allegations of his Amended Complaint establish that he was provided treatment; (ii) the root of his claim is a difference of opinion as to the number of times and manner which his blood pressure is to be taken; and (iii) Plaintiff fails to allege any harm resulting for the allegedly inadequate treatment. Fourth, the DOC Defendants note that Plaintiff's religious freedom and retaliation claims are not directed at the DOC Defendants and cannot support a cause of action against them. Finally, the DOC Defendants contend that Plaintiff has utterly failed to allege claims sufficient to support a cause of action for the denial of his due process rights.

### 1. Denial of Grievances Cannot Support Liability under Section 1983.

As to the DOC Defendants, the Amended Complaint makes clear that Plaintiff seeks to hold them liable for their roles in the grievance procedure and their failure to grant his grievances and grievance appeals. ECF No. 17 at 13 to 19. See also Id. at 21, ¶ 99 – 100.[2] However, liability cannot be predicated upon the Defendants' roles in the grievance process.

---

[2] The Amended Complaint alleged that

> 99). The action of Nedra Grego is that such defendant upon being advised by a grievance filed by Plaintiff with respects to his First Amendments [sic] Rights to Free Exercise of Religion failed to investigate such claim and interview on [sic] Plaintiff behalf ...

> 100). Defendants Folino and Dorina Varner affirmed the denial of the initial grievance when Plaintiff raised an issue of the First Amendment Free Exercise of Religion that was neither addressed nor correctly decided in violation of Plaintiff's rights. . . .

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988)(citing Parratt v. Taylor, 451 U.S. 527, 537 n. 3 (1981), and Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir.1976)). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. Rode v. Dellarciprete, 845 F.2d at 1207-08.

It has long been recognized that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond, to a prisoner's complaint or grievance, is insufficient to establish personal involvement in the underlying unconstitutional conduct. Id., at 1207–08 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right"); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

---

ECF No. 17 at 21, ¶¶ 99-100.

As recently explained by a member of this Court:

> personal knowledge of constitutional violations cannot be established solely as a result of addressing grievances. *See* [Dellarciprete], 845 F.2d at 1208. Additionally, the denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement necessary for liability in a Section 1983 action. *See* Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir.2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir.2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct) . . . Wilkerson v. Schafer, No. 09–2539, 2011 U.S. Dist. LEXIS 25916, 2011 WL 900994, at *7 (M.D. Pa. Mar.14, 2011) (allegations that defendants "should be held liable for due process violations because they should have become aware of them through their review of his misconduct appeals is insufficient to establish their personal involvement in the underlying unconstitutional conduct"); Logan v. Lockett, No. 07–1759, 2009 U.S. Dist. LEXIS 24328, 2009 WL 799749, at *8 (W.D. Pa. Mar.25, 2009); . . . Ramos v. Pa. Dept. of Corr., No. 06–1444, 2006 U.S. Dist. LEXIS 51582, 2006 WL 2129148, at * 2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). Therefore, Plaintiff's allegations regarding any of the defendants' conduct in connection with the grievance system do not state a claim for relief. These claims will be dismissed with prejudice.

Jae v. Stickman, Civ.A. No. 12-1332, 2013 WL 4479009, at *3 (W.D. Pa. Aug. 19, 2013), *reconsideration denied by*, 2013 WL 6230654 (W.D. Pa. Dec. 2, 2013).

Because there are no factual allegations of personal involvement by either Superintendent Folino or Chief Grievance Officer Varner, it is recommended that all claims against them be dismissed. Further, to the extent Plaintiff alleges any claims against Defendant Grego beyond the denial of a blood pressure monitor, arising out of the denial of grievances, all claims against her should likewise be dismissed.

### 2. Plaintiff Failed to Exhaust Administrative Remedies against DOC Defendants who are not identified in Grievances.

Plaintiff has provided copies of each of the grievances supporting his claims against all of the Defendants. Review of Plaintiff's grievances reveals that with the exception of one grievance naming Defendant Grego, Plaintiff failed to identify the DOC Defendants in the grievances filed with regard to providing him with a personal blood pressure monitor, his medication schedule during Ramadan in violation of his First Amendment exercise of religion rights or with regard to the failure to monitor or his blood pressure as often as Plaintiff would prefer. See, ECF No. 9-1 through 9-8.

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion requirement is mandatory, see Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 741 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). There is no "futility" exception to the administrative exhaustion requirement and dismissal of a claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil-rights action. Ahmed v.

Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) (citing Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000)).

Courts have also imposed a procedural default component on the exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. Id., 372 F.3d at 218. "As for the failure to identify named defendants on the grievance form ... to the extent the identity of a defendant was "a fact relevant to the claim," Pennsylvania's prison grievance policy mandate[s] that the identification be included in the inmate's statement of facts on the grievance form. And ... in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a failure to properly exhaust his administrative remedies under the PLRA." Williams v. Pennsylvania Dep't. of Corr., 146 F. App'x 554, 557 (3d Cir.2005).

In Grievance No. 378412, submitted on August 22, 2011, Plaintiff names only Dr. Jin and complains about his alleged interference with Plaintiff's exercise of his religion by requiring him to take his blood pressure medication during the daylight hours of Ramadan. ECF No. 9-2, pp. 1-2. A related grievance, filed on June 12, 2012, concerns a letter he received (ECF No. 9-6) from the Islamic Chaplin excusing Plaintiff from Ramadan in 2012 because of his medication schedule. ECF No. 9-6. This grievance also does not name any of the DOC Defendants. This was followed up with a grievance, No. 416000, filed the following day, requesting that Plaintiff be provided his medication

11

before the fasting hours and names only the "medical department." With regard to his medical treatment, Plaintiff filed Grievance No. 380198, identifying a physician's assistant (Jane Doe) and complaining about the lack of treatment for a leg problem. ECF No. 9-7. Plaintiff also filed Grievance No. 357323, complaining about the manner in which his blood pressure was taken through his cell slot, and identifying only nurse "Jane Doe." ECF No. 9-8. Plaintiff subsequently filed Grievance Nos. 381164 and 345313, identifying only Dr. Jin, L Moore, and Defendant Grego, complaining about their failure to provide sufficient answers regarding his request for a personal blood pressure monitor. ECF No. 9-9. Grievance Nos. 397562 and 397564 also identify only Dr. Jin and complain of the treatment provided for blood in his urine, and allege that Dr. Jin was negligent in prescribing an incorrect method to deliver pain medication (a shot) and inappropriately housing him in a psychological cell rather than a regular infirmary bed. ECF No. 9-10.

Given Plaintiff's failure to identify any DOC Defendant in the relevant grievances (with the exception of Grievance No. 345313, naming Defendant Grego and her alleged failure to provide an explanation for the denial of a personal blood pressure monitor), Plaintiff is barred from litigating any claims against the DOC Defendants Folino and Varner arising out of his medical treatment or the exercise of his religion. Plaintiff is similarly barred from litigating any claims against Defendant Grego except for a claim related to her failure to provide a personal medical device. Notably, as set forth below, this claim fails on the merits.

### 3. Eighth Amendment Deliberate Indifference/Medical Treatment

In his remaining claim asserted against the DOC Defendants, Plaintiff alleges that Defendant Grego's failure to provide a blood pressure monitoring device or a satisfactory explanation for the denial of a personal monitor, which Plaintiff contends places his life in jeopardy, and establishes deliberate indifference to his serious medical condition.

Plaintiff faces an exacting burden in advancing this Eighth Amendment claim. To sustain such a claim, he must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer, the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers–Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976).

The mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation. Id., 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993) (citations omitted). In a prison medical context, deliberate indifference is generally not found

13

when, as is the case here, some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa.Oct.13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under Section 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')." Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care.

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his ... care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some

14

> more culpable state of mind, do not constitute 'deliberate indifference.'"
> "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation."…. [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care…. Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F. App'x at 197–198. (citations omitted).

Thus, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. Accordingly, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under Section 1983; see e.g., Cause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009) (dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F. App'x 454 (3d Cir. 2009); Ascemi v. Diaz, 247 F. App'x 390 (3d Cir. 2007), since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa.1997) (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir.1977)).

Plaintiff's Complaint makes clear that his hypertension is being treated and monitored, and he is being provided appropriate medication to treat his condition. While

he may not agree with the course of treatment, Plaintiff does not allege that the monitoring currently performed has resulted in any adverse effects to his health. Plaintiff's disagreement with the frequency of blood pressure monitoring simply does not give rise to a constitutional question. Accordingly, Plaintiff has failed to state a claim against Defendant Grego as a matter of law.

### D.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss [ECF No. 41] be granted, and that the DOC Defendants, Louis Folino, Dorina Varner and Nedra Grego, be dismissed from this action. Upon dismissal of the DOC Defendants, Plaintiff's remaining claims, asserted against Byunchak Jin, M.D., consist of Plaintiff's First Amendment free exercise of religion and retaliation claims arising out of the scheduling of his medication and his fast participation during Ramadan, and his Eighth Amendment medical treatment deliberate indifference claim.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections no later than June 16, 2014. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7

(3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.]]

          Respectfully submitted,

          <u>/s/ Maureen P. Kelly</u>
          MAUREEN P. KELLY
          UNITED STATES MAGISTRATE JUDGE

Dated: May 28, 2014

cc:    The Honorable Arthur J. Schwab
       United States District Judge
       All counsel of record by Notice of Electronic Filing

       Roger Judge
       DT-6550
       SCI Greene
       175 Progress Drive
       Waynesburg, PA 15370

       All counsel of record via CM/ECF